**SO ORDERED,**

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: August 21, 2014**

The Order of the Court is set forth below. The docket reflects the date entered.

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

KARDELL ADAMS, SR. AND                                    CASE NO. 14-00580-NPO
CRYSTAL L. ADAMS,

DEBTORS.                                                                    CHAPTER 13

## MEMORANDUM OPINION AND ORDER:
### (1) GRANTING THE AMENDED MOTION FOR CONTEMPT;
### (2) AWARDING DAMAGES UNDER 11 U.S.C. 362(k); (3) OVERRULING
### THE OBJECTION TO CONFIRMATION; (4) DENYING THE MOTION TO
### STRIKE; AND (5) GRANTING THE C. ADAMS OBJECTION TO PROOF OF CLAIM

These matters came before the Court at two (2) separate hearings in July 2014. On July 1,

2014, the Court held a hearing (the "July 1 Hearing") on the Amended Motion for Citation for

Contempt (the "Amended Motion for Contempt") (Dkt. 70) filed by Kardell Adams, Sr. ("K.

Adams") and Crystal L. Adams ("C. Adams" or, together with K. Adams, the "Debtors"); the

Response to Debtors Amended Motion for Citation for Contempt (DKT70) (the "Response to

Amended Motion for Contempt") (Dkt. 80) filed by Kevin Taplin d/b/a T's Auto Sales

("Taplin"); the Debtor's Motion to Strike Creditor's Response Docket #80 (the "Motion to

Strike") (Dkt. 82) filed by the Debtors; and the Response to Debtors Motion to Strike Creditor's

Response (DKT 80) (the "Response to the Motion to Strike") (Dkt. 87) filed by Taplin in the

above-styled bankruptcy case (the "Bankruptcy Case"). At the July 1 Hearing, the Debtors were

represented by L. Jackson Lazarus ("Lazarus"), and Taplin was represented by Danny Smith ("Smith"). The Court held the second hearing (the "July 29 Hearing" or, together with the July 1 Hearing, the "July Hearings") on the Debtor's Objection to the Proof of Claim of Kevin Taplin, d/b/a T's Auto Sales Claim #9 (the "C. Adams Objection to Proof of Claim") (Dkt. 69) filed by the C. Adams; the Objection of Kevin Taplin d/b/a/ T's Auto Sales to Debtors Confirmation of Plan (the "Objection to Confirmation") (Dkt. 86) filed by Taplin; the Debtors' Answer to the Objection to Confirmation Plan Filed Herein by T's Auto Sales (#86) (the "Debtors' Response to the Objection to Confirmation") (Dkt. 88) filed by the Debtors; the Affidavit of Attorney's Fees (the "Fee Affidavit") (Dkt. 94) filed by Lazarus; the Response to Affidavit of Attorney's Fees (DKT94) (the "Response to the Fee Affidavit") (Dkt. 97) filed by Taplin; and the Motion for Withdrawal of Counsel (the "Motion for Withdrawal") (Dkt. 98) filed by Smith. At the July 29 Hearing, Lazarus appeared on behalf of the Debtors, and Smith appeared on behalf of Taplin.

The Court, after considering the pleadings, arguments, and evidence, ruled from the bench at both of the July Hearings. At the end of the July 1 Hearing, the Court granted the Amended Motion for Contempt, but reserved the damages issues for later decision and took the Motion to Strike under advisement. At the end of the July 29 Hearing, the Court took C. Adams Objection to Proof of Claim under advisement; overruled the Objection to Confirmation; and granted Smith's Motion for Withdrawal, but effective only as of the conclusion of that hearing. The Court ordered Smith to submit a proposed order granting the Motion for Withdrawal. This Opinion memorializes and explains the Court's verbal bench rulings as to all matters heard at the July Hearings and serves as the Court's rulings on those matters taken under advisement,

including the Motion to Strike, the C. Adams Objection to Proof of Claim, and the damages related to the Amended Motion for Contempt. To that end, the Court finds as follows:[1]

## Jurisdiction

The Court has jurisdiction over the parties to and the subject matter of this case pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E), (G), and (L). Notices of the Motion to Strike, the Amended Motion for Contempt, the C. Adams Objection to Proof of Claim, and the Objection to Confirmation were proper under the circumstances.

## Facts

1.      On February 21, 2014, the Debtors filed a voluntary petition (Dkt. 1) for relief pursuant to chapter 13 of the United States Bankruptcy Code.

2.      On March 3, 2014, the Debtors filed both their Chapter 13 Plan (Dkt. 10) and their statements and schedules regarding their current income, expenses, and creditors (Dkt. 8). On Schedule D – Creditors Holding Secured Claims, the Debtors listed T's Auto Sales as a creditor with a claim of $5,354.75 secured by a 2003 Ford Expedition (the "Ford Expedition") with a current value of $5,500.00. (Dkt. 8 at 8).

3.      On April 25, 2014, two individuals (the "Repo Men") appeared at the Debtors' home under the direction of Taplin to repossess the Ford Expedition.  The Debtors informed the Repo Men that they had filed bankruptcy, and, therefore, the Ford Expedition could not be repossessed lawfully. The Debtors telephoned Lazarus during the repossession and allowed him to speak directly to the Repo Men in order to provide further proof of their bankruptcy filing.

---

[1] The following constitutes the Court's findings of fact and conclusions of law pursuant to Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure.

Despite the pleas from both Lazarus and the Debtors, the Repo Men repossessed the Ford Expedition anyway.

4.      On April 26, 2014, the day after the repossession, Lazarus telephoned Taplin and sent him a text message in an attempt to persuade Taplin to return the vehicle to the Debtors, but Taplin did not answer his telephone calls, return his calls, or respond to his text message. Lazarus also wrote a letter (the "Letter") (Debtors Ex. 1) to Taplin stating that he was in the process of filing a suit against Taplin for willfully violating the automatic stay by repossessing the Ford Expedition. On April 27, 2014, The Debtors sent a text message to Taplin asking him to return the vehicle in light of their pending Bankruptcy Case, to which Taplin responded with a text message stating that the repossession "was their problem, not his."

5.      On April 28, 2014, the Debtors filed the Motion for Citation for Contempt (the "Original Motion for Contempt") (Dkt. 32) requesting that the Court hold Taplin in contempt of court and award the Debtors compensatory damages, punitive damages, and attorney's fees because Taplin's repossession of the Ford Expedition violated the automatic stay provisions of 11 U.S.C. 362(a).[2]

6.      On May 20, 2014, the Court held a hearing (the "May Hearing") on the Original Motion for Contempt. Lazarus represented the Debtors, and Taplin represented himself. The Court allowed the Debtors, who had missed work to attend the May Hearing, to testify and introduce evidence supporting the Original Motion for Contempt. Both K. Adams and C. Adams testified, and they collectively introduced into evidence two (2) exhibits: (1) a Letter from Lazarus to Taplin informing him that the Debtors were in the process of filing a suit against Taplin for his willful and knowing violation of the automatic stay; and (2) a car rental receipt

---

[2] Hereinafter, all code sections refer to the United States Bankruptcy Code found at title 11 of the United States Code unless otherwise noted.

(the "Enterprise Receipt") (Debtors Ex. 2) from Enterprise Leasing Company. The Debtors testified that Taplin was still in possession of the Ford Expedition at the time of the May Hearing and that they had been forced to make alternative transportation arrangements due to Taplin's repossession of the vehicle. In response, Taplin conceded that he currently possessed the Ford Expedition but stated that the Debtors had other methods of transportation. After the presentation of the Debtors' case, the Court ordered that the May Hearing be continued to June to allow Taplin to retain counsel and present his case. The Court also explained to Taplin that he should consider returning the Ford Expedition to the Debtors because of his potential liability and the ongoing accrual of damages. The next day, May 21, 2014, Taplin returned the Ford Expedition to the Debtors.

7.     On May 30, 2014, the Debtors filed the Brief in Support of Punitive Damages (Dkt. 51) providing legal authority for their assertion that Taplin's conduct constituted a willful violation of the automatic stay under § 362(k) that entitles the Debtors to punitive damages.

8.     On June 2, 2014, the Court held a hearing (the "June Hearing") to allow Taplin to present his case. Lazarus and the Debtors were present at the June Hearing. Taplin attended the hearing accompanied by an individual who identified herself as a "law enforcement officer" who "works along with [Taplin] in his business capacity," but is not a licensed attorney. After the Court informed Taplin that a non-attorney could not represent him at the June Hearing, Taplin explained that he had believed he had retained Smith, a bankruptcy attorney, but there had been a "mix-up" regarding payment of Smith's retainer. Taplin then requested another continuance so that Smith could appear on his behalf. The Court granted the continuance provided that Taplin deliver a $500.00 certified check to Lazarus to compensate the Debtors for lost wages and

attorney expenses due to their attendance at the June Hearing. Taplin subsequently complied with the Court's orders by delivering a certified check to Lazarus' office.

9.      On June 9, 2014, the Debtors filed the Amended Chapter 13 Plan (the "Amended Plan") (Dkt. 66). On June 12, 2014, the Debtors filed the Amended Motion for Contempt. On June 19, 2014, Taplin, now being represented by Smith, filed the Response to Amended Motion for Contempt.

10.     On June 12, 2014, Taplin filed a proof of claim (the "Proof of Claim") (POC 9-1) in the amount of $6,766.11. That same day, the Debtors filed the C. Adams Objection to Proof of Claim on the grounds that the amount of the claim was excessive and that Taplin should be precluded from receiving payment because of his egregious behavior in repossessing the vehicle. On June 16, 2014, Harold J. Barkley, Jr., the standing chapter 13 trustee (the "Trustee"), filed the Trustee's Objection to Proof of Claim (the "Trustee's Objection to Proof of Claim") (Dkt. 77). On June 19, 2014, Taplin filed an amended proof of claim (the "Amended Proof of Claim") (POC 9-3) in the amount of $5,354.75. The Trustee's Objection to the Proof of Claim was subsequently withdrawn pursuant to the Court's Order (Dkt. 81).

11.     On June 23, 2014, the Debtors filed the Motion to Strike requesting the Court to strike a portion of the Response to Amended Motion for Contempt. On June 27, 2014, Taplin filed the Response to the Motion to Strike.

12.     At the July 1 Hearing, Lazarus appeared on behalf of the Debtors, and Smith appeared on behalf of Taplin. Taplin, however, was not present at the July 1 Hearing. According to Smith, he had instructed Taplin to appear at the July 1 Hearing an hour early, but Taplin failed to appear. Smith stated that as a result of Taplin's absence, he did not have any evidence to present to the Court regarding the Amended Motion for Contempt. The Court, relying solely on

the evidence presented by the Debtors at the May Hearing, ruled from the bench finding that Taplin had violated the automatic stay willfully. As a result, the Court granted the Amended Motion for Contempt. The Court then took the Motion to Strike under advisement and allowed the Debtors to present evidence at the July 1 Hearing as to the damages suffered because of Taplin's actions. After the Debtors' presentation, the Court also took the matter of damages under advisement and instructed Lazarus to file an affidavit attesting to his fees.

13.     On July 10, 2014, Lazarus filed the Fee Affidavit seeking $21,921.00 in fees and costs. The following day, the Court entered the Order Imposing Deadline for Response to the Affidavit of Attorney's Fees (Dkt. 95) giving Taplin fourteen (14) days to file a response to the Fee Affidavit. On July 24, 2014, Taplin filed the Response to the Fee Affidavit arguing that the attorney's fees are excessive and unreasonable.

14.     On July 25, 2014, four days before the July 29 Hearing, Smith filed the Motion for Withdrawal seeking permission to withdraw as Taplin's counsel for multiple reasons, including a lack of communication with his client. At the July 29 Hearing, Smith explained that despite his many efforts, he had not spoken to Taplin since June 27, 2014 and, as a result, he could not adequately represent Taplin going forward. Smith also stated that he filed the Response to the Fee Affidavit without speaking to Taplin in an attempt to prevent an adverse ruling by default as to the reasonableness of the fees. The Court found that Smith showed good cause for withdrawal and granted the Motion for Withdrawal, effective at the conclusion of the July 29 Hearing. As to the Objection to Confirmation, the Court held that it should be overruled in light of Smith's inability to proceed on the matter. Regarding the Objection to the Proof of Claim, the Debtors argued that the Amended Proof of Claim should be disallowed because of Taplin's contemptuous behavior and that any money that would be paid to Taplin through the plan should

be applied as a credit to any damages awarded by the Court for Taplin's violation of the automatic stay. The Court took the C. Adams Objection to Proof of Claim under advisement.

**Discussion**

This Opinion (1) memorializes and explains the Court's bench rulings as to the Amended Motion for Contempt and the Objection to Confirmation and (2) serves as the Court's rulings on the Motion to Strike, the Objection to Proof of Claim, and the issue of damages that were taken under advisement at the July Hearings. The Court will address each of these matters in turn, except that the Court will discuss the issue of damages and the Amended Motion for Contempt concurrently for the sake of brevity.

**A.      Amended Motion for Contempt**

**1.      Willful Violation of the Automatic Stay**

Upon the filing of a bankruptcy petition, "an automatic stay operates as a self-executing injunction" that prevents creditors from pursuing collection efforts against the debtor or the property of the debtor's estate for pre-petition debts. *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 354-55 (5th Cir. 2008). The purpose behind the automatic stay in § 362(a) is to allow a debtor a "breathing spell" and a chance for a fresh start. *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 301 (5th Cir. 2005) (quotation omitted). Should the automatic stay be violated, Congress has provided a debtor with a private right of action for any "willful violation." *Campbell*, 545 F.3d at 355. Section 362(k) provides, in pertinent part: "[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k).

The Fifth Circuit Court of Appeals has established a three-part test for establishing an actionable violation of the stay under § 362(k): (1) the creditor must have known of the existence of the stay; (2) the creditor's acts must have been intentional; and (3) the creditor's acts must have violated the stay. *Young v. Repine (In re Repine)*, 536 F.3d 512, 519 (5th Cir. 2008). Here, the Debtors allege that Taplin knew about the Bankruptcy Case and willfully violated the stay by intentionally repossessing the Ford Expedition.

Regarding the first part of the test, this Court has held that oral notice of the filing of a bankruptcy petition is sufficient to satisfy the "knowledge" element of § 362(k). *See Johnson v. Magee Rentals, Inc. (In re Johnson)*, 478 B.R. 235, 246-47 (Bankr. S.D. Miss. 2012); *Burns v. Home Zone Sales & Lease Purchase, LLC (In re Burns)*, 503 B.R. 666, 672-73 (Bankr. S.D. Miss. 2013). In this matter, the Debtors told the Repo Men about their pending Bankruptcy Case prior to the repossession. In addition, Lazarus spoke to the Repo Men on the telephone confirming the Debtors' statement about their pending Bankruptcy Case. Under Mississippi law, knowledge and information received by an agent conducting the business of a principal is imputed to the principal, regardless of whether the agent communicated that knowledge or information to the principal. *Lane v. Oustalet*, 873 So. 2d 92, 95-96 (Miss. 2004) (citations omitted). The existence of an agency relationship depends upon whether the parties intended to create an agency relationship, a factual issue that may be proved by either direct or circumstantial evidence. *Engle Acoustic & Tile, Inc. v. Grenfell*, 223 So. 2d 613, 617 (Miss. 1969). Here, Taplin directed the Repo Men to appear at the Debtors' residence and repossess the Ford Expedition to satisfy a debt owed to Taplin. The Court finds that these facts establish an agency relationship between Taplin and the Repo Men. As a result of the agency relationship, the information regarding the Debtors' pending Bankruptcy Case that was communicated to the

Repo Men prior to the repossession was imputed to Taplin. Therefore, Taplin had notice of the existence of the automatic stay and, thus, the first part of the test is satisfied.

As for the second and third parts of the test, it is clear from the Repo Men's actions, Taplin's actions, and Taplin's testimony at the July 1 Hearing that the repossession and retention of the Ford Expedition was intentional and violated the automatic stay. *See* 11 U.S.C. § 362(a)(3) ("[A] petition . . . operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate.") Moreover, in the Response to Amended Motion for Contempt, Taplin admits that he violated the automatic stay. Instead, Taplin asserts that he did not intentionally violate the automatic stay. The Fifth Circuit, however, has held that specific intent to violate the automatic stay is not required to prove the willfulness of a creditor's violation. *Campbell*, 545 F.3d at 355. Here, all three parts of the test established by the Fifth Circuit in *Repine* are satisfied. Therefore, the Court ruled at the July 1 Hearing that Taplin's repossession of the Ford Expedition constituted a willful violation of the automatic stay under § 362(k).

### 2.      Civil Contempt

As the automatic stay is essentially a court-ordered injunction, any creditor who violates the stay may be held in contempt of court. *Carver v. Carver*, 954 F.2d 1573, 1578 (11th Cir. 1992). An action for contempt of court may be either criminal or civil in nature. *Placid Refining Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 612 (5th Cir. 1997) (citation omitted). If the intent behind the contempt order is to punish, then the order is for criminal contempt. *Id.* If, however, the intent of the contempt order is to "coerce compliance with a court order or *to compensate another party for the contemnor's violation*," the order is civil. *Id.* (emphasis added). Bankruptcy courts have the power to hold entities in civil

contempt under § 105(a), but not in criminal contempt. *Sanchez v. Ameriquest Mortg. Co. (In re Sanchez)*, 372 B.R. 289, 309 (Bankr. S.D. Tex. 2007).

Any entity that willfully violates the automatic stay is subject to the bankruptcy court's civil contempt power. *In re Meinke, Peterson, & Damer, P.C.*, 44 B.R. 105, 108 (Bankr. N.D. Tex. 1984). For a creditor's violation of the stay to be willful, the creditor must act with knowledge of the stay. *Id.* If a creditor is found to be in contempt because of a willful violation of the automatic stay, the bankruptcy court may award sanctions to the debtor. *Sanchez*, 372 B.R. at 310. As described above, Taplin's repossession and retention of the Ford Expedition constituted a willful violation of the automatic stay. Therefore, Taplin is in civil contempt of court, and the Debtors are entitled to damages arising out of Taplin's violation of the automatic stay.

### 3.    Damages

Since the Court has determined that Taplin willfully violated the automatic stay and is in contempt of court, the Debtors are entitled to damages. A finding of civil contempt entitles a debtor to compensation for the damages suffered as a result of the creditor's actions. *Terrebonne Fuel & Lube, Inc.*, 108 F.3d at 612-13. Under § 362(k), a debtor who successfully proves all three (3) elements of a willful violation of the automatic stay may recover actual damages, including attorney's fees, and, if appropriate, punitive damages. *See* 11 U.S.C. § 362(k). Because the damages available under § 362(k) include the compensatory damages a debtor can recover in an action for contempt of court, the Court's calculation of damages pursuant to § 362(k) is sufficient for the entirety of the Debtors' damages.

Damages under § 362(k) "must be proven with reasonable certainty and may not be speculative or based on conjecture." *Clayton v. Old Kent Mortg. Co. (In re Clayton)*, No. 09-

03024, 2010 WL 4482810, at *2 (Bankr. S.D. Tex. Oct. 29, 2010) (quotation omitted). In addition, courts have developed a special rule requiring that a moving party mitigate damages in actions brought under § 362(k). *Tracy v. Bank of Am., N.A. (In re Tracy)*, No. 08-5125, 2010 WL 5462490, at *1 (Bankr. W.D. Tex. Dec. 29, 2010) (citation omitted). The Court will first consider the amount of the Debtor's actual damages and then address the mitigation issue. Finally, the Court will consider whether an award of punitive damages is appropriate.

### a.      Actual Damages

The Debtors claim they are entitled to actual damages for (1) loss of property; (2) vehicle rental fees; (3) emotional distress; and (4) attorney's fees and expenses. Specifically, the Debtors request a total of $5,000 in damages for loss of property, vehicle rental fees, and emotional distress. As evidenced by the Fee Affidavit, the Debtors request $21,921.00 for attorney's fees and expenses. The Court will address each category of damages in turn.

### (1.)      Loss of Property

The Debtors request damages to compensate them for the loss of the Ford Expedition. The Ford Expedition was repossessed on April 25, 2014. Because of the wrongful repossession, the Debtors are entitled to the value of the use of the Ford Expedition from the time the vehicle was repossessed until the day the Debtors found a substitute vehicle. *See* RESTATEMENT (SECOND) OF TORTS § 931. At the May Hearing, the Debtors testified that they found a replacement vehicle for the Ford Expedition on May 16, 2014, the twenty-first day after the repossession, when they rented a car from Enterprise Leasing Company. As a result, the Court finds that the Debtors are entitled to damages for the loss of use of the Ford Expedition for twenty (20) days, that is, from April 25, 2014 to May 15, 2014. At the July 1 Hearing, the Debtors stated that a minimum of $100.00 per day would be fair compensation for the loss of the

vehicle. When the Debtors rented a car, however, the Enterprise Receipt indicates that the cost was only $40.99 per day. The Court finds that $40.99 is a reasonable amount for the loss of use of the Ford Expedition for the period prior to the rental of the car. Consequently, the Court concludes that the Debtors are entitled to $819.80[3] for loss of property damages from April 26, 2014 to May 15, 2014.

### (2.) Vehicle Rental Fees

The Debtors request damages to compensate them for the cost of renting a vehicle while Taplin possessed the Ford Expedition. The Enterprise Receipt shows that the Debtors rented a vehicle on May 16, 2014 for a price of $249.87. (Debtors Ex. 2). The Enterprise Receipt also shows that the Debtors were required to return the vehicle by May 19, 2014. The Debtors, however, testified that they extended the rental agreement through May 21, 2014, the day Taplin returned the Ford Expedition, for an additional fee of $131.00. Consequently, the Court determines that the Debtors are entitled to $380.87[4] to compensate them for the cost of renting a vehicle to replace the Ford Expedition for six (6) days, that is, from May 16, 2014 to May 21, 2014.

### (3.) Emotional Distress

The Debtors request emotional distress damages stemming from the days immediately following the repossession of the Ford Expedition. At the May Hearing, C. Adams testified that her infant daughter was sick with influenza on the day of the repossession. According to C. Adams, she had to arrange for another person to drive her and her daughter to a hospital emergency room the day after the repossession, which resulted in emotional distress.

---

[3] 20 days x $40.99 = $819.80.

[4] $249.87 + $131.00 = $380.87.

The Fifth Circuit has not yet decided the standard of proof necessary for a debtor to recover damages for an emotional distress claim under § 362(k). *Repine*, 536 F.3d at 521. The Fifth Circuit, however, has cautioned that a debtor must provide, at a minimum, "specific information" regarding the damages caused by the emotional injury. *Id.* at 521-22. "[H]urt feelings, anger and frustration are part of life, and are not the types of emotional harm that could support an award of damages." *Collier v. Hill (In re Collier)*, 410 B.R. 464, 477 (Bankr. S.D. Tex. 2009) (citing *Hitt v. Connell*, 301 F.3d 240, 250-51 (5th Cir. 2002)). A debtor is entitled to damages only if he or she can show a "specific discernable injury to [his or her] emotional state, proven with evidence regarding the nature and extent of the harm." *Id.* Corroborating evidence of emotional distress is not required, "but only if the testimony [of the debtor] is particularized and extensive enough to meet the specificity requirement." *Id.* In addition, there must be a reasonable relationship between the willful violation and the emotional injury. *Clayton*, 2010 WL 4482810, at *3.

The Court finds that the Debtors' emotional distress damages are too speculative to warrant an award. C. Adams' testimony that she had to have another person drive her and her child to a hospital emergency room was the extent of any evidence of a "discernable injury." This testimony is neither particularized nor extensive enough to meet the specificity requirement for an award of damages for emotional distress. *See Repine*, 536 F.3d at 521-22 (noting that "generalized assertions" are not sufficient to warrant emotional injury damages). There was no testimony or evidence as to the effect the repossession had on the Debtors' emotional states, much less any showing of a specific discernible injury. *See Collier*, 410 B.R. at 477. Furthermore, assuming the Debtors did experience emotional distress, it would be difficult to determine whether such distress was attributable to the repossession or the child's illness. For

these reasons, the Court finds that the Debtors have not met their burden in proving that they are entitled to damages for emotional distress.

### (4.)   Attorney's Fees and Expenses

A debtor may recover reasonable attorney's fees and expenses incurred in prosecuting a § 362(k) action. *Repine*, 536 F.3d at 522. The Debtors seek recovery of attorney's fees and expenses billed by Lazarus in the amount of $21,921.00 that was incurred from April 25, 2014 to July 1, 2014.

In order to determine whether the fees set forth in the Fee Affidavit are reasonable, the Court employs the "lodestar" method, which requires the Court to multiply the prevailing hourly rate in the community by the number of hours that an attorney would reasonably expend pursuing his or her client's claim. *Walker & Patterson, P.C. v. Cahill (In re Cahill)*, 428 F.3d 536, 540 (5th Cir. 2005). After calculating the "lodestar" fee, the Court considers whether to adjust that fee upwards or downwards based upon the twelve factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *overruled on other grounds* by *Blanchard v. Bergeron*, 489 U.S. 87 (1989). The *Johnson* factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the  skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Johnson*, 488 F.2d at 717-19. The United States Supreme Court has cautioned that the presumption that the "lodestar" method provides a reasonable fee is a "strong one." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010). Similarly, the Fifth Circuit has held that "[t]he

lodestar may not be adjusted due to a *Johnson* factor that was taken into account during the initial calculation of the lodestar." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013)

The Fee Affidavit reflects that from April 25, 2014 to July 1, 2014, the Debtors were charged an hourly billing rate of $300.00 for 71.75 hours of work completed by Lazarus, which totaled $21,525.00. The Fee Affidavit also includes an itemization of expenses totaling $396.00. In sum, Lazarus is seeking a total of $21,921.00 in attorney's fees and expenses.  The Court will begin by addressing the reasonableness of the attorney's fees. The Mississippi Bar Association's online Lawyer Directory reflects that Lazarus was admitted to practice law in Mississippi in 1982. Miss. Bar Lawyer Directory, https://www.msbar.org/lawyer-directory-search.aspx?searchTerm=lazarus&SearchField=memberLastName&SearchButton=Search   (last visited Aug. 14, 2014). The Court finds that $300.00 is a reasonable hourly rate for an attorney of Lazarus' skill, expertise, and reputation. Therefore, the Court finds that the hourly billing rate of $300.00 is reasonable. As to the number of hours billed, the Court finds that several entries in the Fee Affidavit are unreasonable.

First, several time entries include fees that were not incurred in the Debtors' prosecution of their § 362(k) action. In four (4) separate entries, totaling 6.70 hours,[5] Lazarus bills for time spent preparing and filing the C. Adams Objection to Proof of Claim and the Debtors' Response to the Objection to Confirmation. While these filings relate to some of the same facts as the Debtors' § 362(k) action, the filings are not a part of the prosecution of the Debtors' claim for a

---

[5] These four (4) entries, totaling 6.70 hours, are: (1) June 11, 2014 - .75; (2) June 12, 2014 – 3.45; (3) June 13, 2014 – 1.25; and (4) June 27, 2014 - 1.25.

willful violation of the automatic stay. Therefore, the "lodestar" amount is reduced by $2,010.00[6] to $19,515.00.[7]

Second, Lazarus engaged in "block billing," which is a billing method in which an attorney lumps together time spent working on a case, rather than enumerating the time expended on specific tasks. *Harris v. Allstate Ins. Co.*, No. 07-8789, 2009 WL 86673, at *3 (E.D. La. Jan. 12, 2009) (collecting cases); *see also Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, No. 3:09-CV-1596, 2010 WL 3294248, at *3 (N.D. Tex. Aug. 20, 2010). The act of "block billing" impedes a court's ability to determine the reasonableness of the hours spent on individual tasks and has served as the basis for courts to issue a flat reduction of a specific percentage from an award of attorney's fees. *Harris*, 2009 WL 86673, at *3. After reviewing the Fee Affidavit, the Court finds that Lazarus engaged in "block billing" on numerous entries. For example, the 6.50 billing entry for April 28, 2014 has the following description:

> Prepare and File Motion for Citation for Contempt[;] [s]everal more attempts to contact the creditor; [r]ender advice to clients about mitigation of damages[;] [r]eview of documents of sale of 2003 Ford Expedition; [and r]esearch law regarding the closeness in time of the [p]urchase of vehicle and the subsequent filing of the [p]etition in bankruptcy to rule out any questions [a]s to propriety of the contempt action.

(Fee Affidavit at 2). As to the narrative, it is difficult for the Court to determine the reasonableness of the time expended to "Prepare and File Motion for Citation for Contempt" when it is grouped together with three (3) other tasks.

---

[6] 6.70 hours x $300.00 = $2,010.00

[7] $21,525.00 - $2,010.00 = $19,515.00.

In total, the entries that contained "block billing" totaled 13.15 hours.[8] Due to the occurrences of "block billing," the Court is unable to determine fully the reasonableness of those billing entries. As a result, the Court will decrease Lazarus' fees for these specific entries by fifty percent (50%). Therefore, the "lodestar" amount is reduced further by $ 1,972.50[9] to $17,542.50.[10]

Third, the Fee Affidavit includes four (4) separate entries, totaling 1.15 hours, the Court finds represent an unreasonable amount of time expended given the work described. Specifically, these entries[11] concern text messages Lazarus sent to Taplin. According to the entries, Lazarus expended 1.15 hours to send four (4) text messages. The Court finds this amount of time unreasonable given the nature and amount of work completed. Therefore, the Court finds that Lazarus' fees for these four (4) specific entries, totaling 1.15 hours, should be reduced by fifty percent (50%), which results in a further reduction of the "lodestar" amount by $172.50[12] to $17,370.00.[13]

As to the final step in determining the reasonableness of fees, the Court recognizes that it has the discretion to modify the "lodestar" fee based upon the twelve *Johnson* factors. *See CRG Partners Grp., L.L.C. v. Neary (In re Pilgrim's Pride Corp.)*, 690 F.3d 650, 652 (5th Cir.2012)

---

[8] In addition to the 6.50 billing entry on April 28, 2014, these entries are: (1) April 26, 2014 - 2.35; (2) April 28, 2014 - 2.75; and (3) June 6, 2014 - 1.55.

[9] 13.15 hours x $300.00 = $3,945.00. $3,945.00 ÷ 2 = $1,972.50.

[10] $19,515.00 - $1,972.50 = $17,542.50.

[11] These four (4) entries, totaling 1.15 hours, are: (1) May 9, 2014 - .25; (2) May 21, 2014 - .35; (3) May 22, 2014 - .25; and (4) May 29, 2014 - .30.

[12] 1.15 x $300.00 = $350.00. $350.00 ÷ 2 = $172.50.

[13] $17,542.50 - $172.50 = $17,370.00.

(holding that United States Supreme Court's decision in *Perdue* did not overrule framework applying *Johnson* factors). The Debtors did not seek an upward departure, and the Court finds that an adjustment to the "lodestar" fee is unnecessary in light of the strong presumption that the "lodestar" method provides a reasonable fee. The Court thus concludes that attorney's fees of $17,370.00 are reasonable and appropriate.

Next, the Court turns to the reasonableness of Lazarus' expenses detailed in the Fee Affidavit. The Debtors seek reimbursement of $396.00 billed by Lazarus for expenses incurred during travel from his office in Natchez, Mississippi to Jackson, Mississippi to attend the May Hearing, the June Hearing, and the July 1 Hearing. The Fee Affidavit reflects that Lazarus billed the Debtors for 240 miles for three (3) round-trip visits, or a total of 720 miles, at a mileage rate of $0.55. The standard mileage rate allowed by the Internal Revenue Service in 2014 is more than the mileage rate charged by Lazarus. *See* I.R.S. Notice 2013-80. Thus, the Court finds that the mileage rate of $0.55 is reasonable. The number of miles per visit appears reasonable as well. Lazarus, however, was compensated for the expenses incurred during his travel to attend the June Hearing when he received the $500.00 certified check from Taplin. For this reason, the Court only finds that $264.00 in expenses[14] is reasonable.  Therefore, after reviewing the Fee Affidavit, the Court finds that the Debtors are entitled to $17,634.00[15] for attorney's fees and expenses.

---

[14] $396.00 in travel expenses for the May Hearing, June Hearing, and July 1 Hearing - $132.00 in travel expenses for the June Hearing for which Lazarus has already been compensated = $264.00.

[15] $17,370.00 + $264.00 = $17,634.00.

### b.      Mitigation of Debtors' Actual Damages

Having determined that the Debtors incurred actual damages in the total amount of $18,834.67,[16] the Court next considers whether the Debtors made reasonable efforts to mitigate those damages. This analysis is necessary to determine whether the Debtors' damages were reasonably incurred as a result of the stay violation by Taplin. *Eskanos & Adler, P.C. v. Roman (In re Roman)*, 283 B.R. 1, 11 (B.A.P. 9th Cir. 2002). The Debtors testified that they and Lazarus attempted to contact Taplin directly numerous times in an effort to obtain possession of the Ford Expedition. Additionally, the Debtors testified that they refrained from renting a replacement vehicle for as long as possible in hopes of Taplin's return of the Ford Expedition and their avoidance of an added expense. Furthermore, the high amount of attorney's fees and expenses is not a result of the Debtors' failure to mitigate damages, but instead a result of Taplin's inability to comply with Court procedures throughout this matter. For these reasons, the Court finds that the Debtors made reasonable efforts to mitigate their actual damages.

### c.      Punitive Damages

Punitive damages may be awarded for a willful violation of the automatic stay under § 362(k) in "appropriate circumstances." The Fifth Circuit has held that an "egregious conduct" standard applies in considering an award of punitive damages.  *Repine*, 536 F.3d at 521, *citing Knaus v. Concordia Lumber Co., Inc. (In re Knaus)*, 889 F.2d 773, 776 (8th Cir. 1989). In consideration of all the circumstances, the Court finds that Taplin's conduct has risen to the level of "egregious" so that it warrants an award of punitive damages.

---

[16] $1,200.67 (loss of property and vehicle rental fees) + $17,634.00 (attorney's fees and expenses) = $18,834.67.

At the May Hearing, Taplin stated that "I have been through bankruptcy before" and "I have been doing this for ten (10) years." Despite this self-touted bankruptcy-collection experience, Taplin's actions have evidenced both a blatant disregard for the bankruptcy process and a pattern of disrespect for the Court. After the Repo Men repossessed the Ford Expedition at Taplin's request, he retained possession of the vehicle for twenty-five (25) days despite numerous requests to have the vehicle returned and warnings of impending litigation. Lazarus and the Debtors made multiple telephone calls and sent several text messages to Taplin, but to no avail. Lazarus also mailed Taplin the Letter informing him that the Debtors were in the process of filing a suit against Taplin for the repossession. The only response the Debtors received from Taplin, however, was a text message stating that the repossession "was their problem, not his." Taplin eventually returned the Ford Expedition to the Debtors after the May Hearing, but his compliance with bankruptcy law came only after the Court warned Taplin about his potential liability and the ongoing accrual of damages. Despite testifying that he received notice in April 2014 regarding the May Hearing, Taplin appeared at the May Hearing without counsel.[17]  The Court granted Taplin's request for a continuance so that he could retain a bankruptcy attorney. Notwithstanding his previous assurances to the Court, Taplin attended the June Hearing without an attorney and instead, arrived with an individual who identified herself as a "law enforcement officer." After being advised that a non-attorney could not represent him at the June Hearing, Taplin requested another continuance, which the Court granted. Taplin retained Smith, but then Taplin failed to stay in contact with Smith or appear at the July 1 Hearing.

---

[17] Taplin called the Court's chambers minutes before the May Hearing was scheduled to begin and requested that the May Hearing be delayed because of his failure to retain counsel. As a result, the May Hearing began forty-five (45) minutes late.

After the Court held that Taplin willfully violated the automatic stay under § 362(k), the Court ordered Lazarus to file the Fee Affidavit so that it could determine the matter of damages. At the July 29 Hearing, Smith stated that despite his many attempts, he had not communicated with Taplin since June 27, 2014 and that he had filed the Response to the Fee Affidavit in an attempt to prevent an adverse ruling as to the amount of attorney's fees.

The Court finds that Taplin's actions constitute egregious conduct that warrants an award of punitive damages. "[Punitive] damages are generally designed to cause a change in the creditor's behavior, and serve as a deterrent to certain actions of creditors." *Collier*, 410 B.R. at 478 (citing *Heghmann v. Indorf (In re Heghmann)*, 316 B.R. 395, 406 (B.A.P. 1st Cir. 2004)). If, after ten (10) years of experience in collection and bankruptcy matters, Taplin believes that his course of action in these proceedings is the proper way to act when a customer commences a bankruptcy case, then punitive measures are necessary to deter him from acting similarly in the future. Not only did Taplin violate the automatic stay when he repossessed the Ford Expedition, but he also refused to return the vehicle for twenty-five (25) days despite the pleas of the Debtors and their attorney. These actions demonstrate a willful disregard and disdain for both the bankruptcy process and one of the most fundamental protections afforded to bankruptcy debtors, the automatic stay. In addition, Taplin's repeated disregard for the Court and its orders has resulted in a waste of judicial resources, not to mention that it has caused K. Adams to miss work in order to attend hearings that were either reset or continued at Taplin's request. For these reasons, the Court finds that an award of punitive damages in the amount of $6,600.00 is proper. *See Credit Nation Lending Servs. LLC v. Nettles*, 489 B.R. 239, 251 (N.D. Ala. 2013) (affirming a bankruptcy court's award of $6,127.54 in punitive damages against a creditor who willfully violated the automatic stay by wrongfully repossessing a vehicle and retaining it for eleven (11)

days); *In re Andrus*, No. 04-00061, 2004 WL 2216493, at *15-16 (Bankr. D. Idaho Sept. 23, 2004) (awarding punitive damages of $8,000.00 against a creditor who willfully violated the automatic stay by wrongfully repossessing a vehicle).

The Court finds that $6,600.00 in punitive damages is an appropriate amount to deter Taplin from repeating his wrongful actions in future transactions with customers. The amount of punitive damages also ensures that Taplin's security interest in the Ford Expedition is cancelled, which the Court finds appropriate in this situation. *See Credit Nation Lending Servs. LLC*, 489 B.R. at 251 (affirming a bankruptcy court's award of punitive damages that equaled and, therefore, cancelled the violator's security interest in the repossessed vehicle); *Andrus*, 2004 WL 2216493, at *15-16 (awarding a punitive damage of $8,000 that encompassed the value of the repossessed vehicle, therefore, resulting in the release of the creditor's lien); *In re Meeks*, 260 B.R. 46, 48 (Bankr. M.D. Fla. 2000) (awarding punitive damages that included the cancellation of the debtor's indebtedness to the violating creditor); *Brown v. Town & Country Sales & Serv., Inc. (In re Brown)*, 237 B.R. 316, 322 (Bankr. E.D. Va. 1999) (canceling a creditor's security interest in a repossessed vehicle for a willful violation of the automatic stay); *In re Cepero*, 226 B.R. 595, 601 (Bankr. S.D. Ohio 1998) (prohibiting a creditor from asserting any claim against a debtor relating to a repossessed vehicle when the creditor willfully violated the automatic stay). The $6,600.00 in punitive damages exceeds the value of Taplin's Proof of Claim plus any accrual of interest. The offset of the Debtors' debt to Taplin and the award of punitive damages results in the cancellation of Taplin's security interest in the Ford Expedition and the satisfaction of the underlying debt owed to Taplin. Taplin, therefore, is required to release his lien on the Ford Expedition and deliver the certificate of title to the Debtors in accordance with MISS. CODE ANN. § 63-21-49 within fourteen (14) days from the date of this Opinion. Any balance remaining

from the offset of the Debtors' debt to Taplin and the $6,600.00 in punitive damages should be added to the remaining $18,834.67 in actual damages awarded to the Debtors. In addition, to the extent that the Trustee currently is holding any money that is to be paid to Taplin through the Amended Plan, that amount should be returned to the Debtors.

**B.      Objection to Confirmation**

In the Objection to Confirmation, Taplin argues that the Amended Plan should not be confirmed because the Debtors purchased the Ford Expedition under false pretenses and that the plan was not filed in good faith. At the July 29 Hearing, Smith stated that due to his inability to communicate with Taplin, he was not prepared to proceed on the Objection to Confirmation and would not be able to represent Taplin going forward. For this reason, the Court finds that the Objection to Confirmation should be overruled.

**C.      Motion to Strike**

In the Motion to Strike, the Debtors ask the Court to strike the portion of the Response to Amended Motion for Contempt that they claim contains immaterial, impertinent and irrelevant matters. Generally, Motions to strike are governed by Rule 12(f) of the Federal Rules of Civil Procedure, which is made applicable to adversary proceedings by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure ("Rule 7012(b)"). While the matter currently before the Court is a contested matter and not an adversary proceeding, Rule 9014(c) of the Federal Rules of Bankruptcy Procedure ("Rule 9014(c)") makes various rules governing adversary proceedings applicable to contested matters. Although Rule 7012(b) is not among the rules delineated within Rule 9014(c), the Court "may at any stage in a particular matter direct that one or more of the other rules in [adversary proceedings] shall apply." FED. R. BANKR. P. 9014(c).

The Court declines to apply Rule 7012(b) to the current contested matter and, thus, finds that the Motion to Strike should be denied. It would be moot to apply Rule 7012(b) to the present matter because the Motion to Strike procedurally is improper, notwithstanding that its use is limited for the most part to adversary proceedings. A Rule 12(f) motion may only be used to attack actual "pleadings" as defined by Rule 7(a) of the Federal Rules of Civil Procedure ("Rule 7(a)"). *Fugitt v. MDOR (In re Fugitt)*, Adv. Proc. 13-00098-NPO, 2014 WL 3888281, at *15 (Bankr. S.D. Miss. Aug. 8, 2014)**;** *see also United States v. Coney*, 689 F.3d 365, 379 n.5 (5th Cir. 2012) ("Rule 12(f) motions only may be directed towards pleadings as defined by Rule 7(a); thus motions, affidavits, briefs, and other documents outside of the pleadings are not subject to Rule 12(f).") (internal citation & quotation omitted). Here, the Debtors are attempting to attack a response to a motion, but a response is not included in Rule 7(a)'s list of pleadings. *See* Fed. R. Civ. P. 7(a). Thus, the Motion to Strike, a Rule 12(f) motion, is not procedurally proper in this situation. Because the Motion to Strike is not proper, the Court finds that Rule 7012(b) should not be applied to the current contested matter. Therefore, the Motion to Strike should be denied.

D.      **C. Adams Objection to Proof of Claim**

In the Debtor's Objection to Proof of Claim, the Debtors argue that Taplin's Proof of Claim should be disallowed because of his egregious behavior. The Court, however, has already held that Taplin's security interest in the Ford Expedition should be cancelled and the underlying debt owed to Taplin should be satisfied as a form of punitive damages for Taplin's willful violation of the automatic stay. As a result, the C. Adams Objection to Proof of Claim should be granted as provided herein.

## Conclusion

Based on the foregoing, the Court found at the July 1 Hearing that the Debtors successfully demonstrated that Taplin willfully violated the automatic stay. Consequently, the Court granted the Amended Motion for Contempt and found Taplin in civil contempt. The Court now concludes that the Debtors should be entitled to actual damages in the amount of $18,834.67[18] and punitive damages in the amount of $6,600.00. Because the $6,600.00 in punitive damages offsets the amount of Taplin's Proof of Claim, Taplin's security interest in the Ford Expedition should be cancelled and the underlying debt owed to Taplin should be satisfied. As a result, Taplin should be required to release his lien on the Ford Expedition and deliver the certificate of title to the Debtors in accordance with MISS. CODE ANN. § 63-21-49 within fourteen (14) days from the date of this Opinion. Any balance remaining from the offset of the Debtors' debt to Taplin and the $6,600.00 in punitive damages should be added to the remaining $18,834.67 in actual damages awarded to the Debtors. In addition, to the extent that the Trustee currently is holding any money that is to be paid to Taplin through the Amended Plan, that amount should be returned to the Debtors. The Court also finds that the Objection to Confirmation should be overruled, the Motion to Strike should be denied, and the C. Adams Objection to the Proof of Claim should be granted as provided herein.

IT IS, THEREFORE, ORDERED that the Amended Motion for Contempt hereby is granted, and Taplin hereby is in civil contempt of court.

IT IS FURTHER ORDERED that the Debtors hereby are awarded actual damages in the amount of $18,834.67 with interest at the federal judgment interest rate, 28 U.S.C. § 1961(a), against Taplin pursuant to § 362(k).

---

[18] $17,634.00 for attorney's fees and expenses + $1,200.67 for loss of property and vehicle rental fees = $18,834.67.

IT IS FURTHER ORDERED that the Debtors hereby are awarded punitive damages in the amount of $6,600.00.  Because the $6,600.00 in punitive damages offsets the amount of Taplin's Proof of Claim, Taplin's security interest in the Ford Expedition hereby is cancelled and the underlying debt owed to Taplin hereby is satisfied. For this reason, Taplin hereby is ordered to release his lien on the Ford Expedition and deliver the certificate of title to the Debtors in accordance with MISS. CODE ANN. § 63-21-49 within fourteen (14) days from the date of this Opinion. Any balance remaining from the offset of the Debtors' debt to Taplin and the $6,600.00 in punitive damages shall be added to the remaining $18,834.67 in actual damages awarded to the Debtors.  In addition, any money currently held by the Trustee that is to be paid to Taplin through the Amended Plan should be returned to the Debtors.

IT IS FURTHER ORDERED that the Objection to Confirmation hereby is overruled.

IT IS FURTHER ORDERED that the Motion to Strike hereby is denied.

IT IS FURTHER ORDERED that the C. Adams Objection to the Proof of Claim hereby is granted as provided herein.

##END OF OPINION##